UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

J.B. STERLING COMPANY,

                 Plaintiff,

v.

WILLIAM H. VERHELLE, JR. and
CYNDEE VERHELLE,

                 Defendants.
_____

**DECISION AND ORDER**

6:15-CV-06271 EAW



## INTRODUCTION

This action involves competing claims concerning renovation work performed by plaintiff J.B. Sterling Company ("Plaintiff") on a home owned by defendant Cyndee Verhelle in Mendon, New York. (Dkt. 1). Pending before the Court is a motion for partial summary judgment filed by defendants William H. Verhelle, Jr. and Cyndee Verhelle (collectively "Defendants"). (Dkt. 67). For the reasons set forth below, Defendants' motion is granted.

## FACTUAL BACKGROUND

The following facts are taken from Defendants' Local Rule 56 Statement of Undisputed Material Facts (Dkt. 67-2) and Plaintiff's response thereto (Dkt. 71), as well as the declarations and exhibits submitted by the parties. Unless otherwise noted, these facts are undisputed.

Defendants are a married couple. (Dkt. 67-2 at ¶ 1; Dkt. 71 at ¶ 1). Since November 16, 2003, Cyndee Verhelle has been the fee owner of a property located at 16 Windham

Hill, Mendon, New York 14506, which is improved by a single-family residence (the "Mendon Property"). (Dkt. 67-2 at ¶¶ 4, 6; Dkt. 71 at ¶¶ 4, 6). Prior to that date, Defendants had owned the Mendon Property as tenants by the entirety. (Dkt. 67-2 at ¶ 5; Dkt. 71 at ¶ 5). Plaintiff does not dispute that Cyndee Verhelle is the sole legal owner of the Mendon Property, but asserts that "at all times relevant" to this action, "William Verhelle represented himself as, and held himself out as an owner of 16 Windham Hill, Mendon, New York." (Dkt. 71 at ¶ 4).

Plaintiff is a home improvement contractor. (Dkt. 67-2 at ¶ 2; Dkt. 71 at ¶ 2). Jeffrey Seidel is the owner, operator, and president of Plaintiff. (Dkt. 67-1 at ¶ 3; Dkt. 71 at ¶ 3).

In or about 2013 or 2014, Defendants decided to substantially remodel the residence on the Mendon Property. (Dkt. 67-2 at ¶ 8; Dkt. 71 at ¶ 8). After a bid process, Plaintiff was chosen to perform the interior home improvement work, which involved "among other things, the total tear-out and reconstruction of the first floor of the residence, including a high end custom kitchen installation and craftmanship in, among other areas, the kitchen, pass through hallway, tasting room, and foyer." (Dkt. 67-2 at ¶ 10; Dkt. 71 at ¶ 10). The parties had worked together in the past, Plaintiff having previously been engaged by Defendants to provide home improvement work. (Dkt. 67-2 at ¶ 12; Dkt. 71 at ¶ 12).

In late January of 2014, Mr. Seidel and Mr. Verhelle engaged in email communications regarding a proposed contract for the contemplated home improvement work. (*See* Dkt. 71-10). On February 5, 2014, Mr. Verhelle sent Mr. Seidel a copy of the contract that he (Mr. Verhelle) had signed. (*See* Dkt. 71-9). Mr. Seidel signed the contract

on behalf of Plaintiff and sent a copy to Mr. Verhelle on February 6, 2014. (*See* Dkt. 67-17).

The home improvement contract signed by Mr. Verhelle and Mr. Seidel (the "Contract") is dated January 21, 2014, and addressed to "Mr. & Mrs. W. Verhelle." (Dkt. 67-18 at 2). It defines the "signing parties" as "William & Cyndee Verhelle (Homeowner)" and "JB Sterling Company (Contractor)." (*Id.*). It is initialed by Mr. Verhelle and Mr. Seidel on the bottom, right-hand corner of each page. (*Id.* at 2-5). On the third page, there are signature lines for "Mr. or Mrs. W. Verhelle" and "J.B. Sterling Company." (*Id.* at 4). Mr. Verhelle's signature is dated "2/3/14," and Mr. Seidel's signature is dated "2/6/14." (*Id.*).

The parties dispute the length of the Contract. Defendants maintain that the Contract totaled four pages (*see* Dkt. 67-1 at 18), while Plaintiff asserts that the Contract had a fifth page (*see* Dkt. 71 at ¶ 14). Each side has submitted to the Court what it purports is the version of the Contract that was signed by Mr. Verhelle and Mr. Seidel. (Dkt. 67-18; Dkt. 71-12). The disputed fifth page is entitled "IN-HOME SALE OR SERVICE NOTICE OF CANCELLATION," and states, in part, that "[i]n the event legal action is instituted to enforce payment of the amount due, the undersigned shall be liable for all attorney's fees, costs and expenses of collection, as well as 1.5% interest per month on balance due." (Dkt. 71-12 at 5). There are signature lines for "Mr. or Mrs. W. Verhelle" and "J.B. Sterling Company," both of which are blank. (*Id.*). However, the disputed fifth page appears to have been initialed in the bottom, right-hand corner by both Mr. Verhelle and Mr. Seidel. (*Id.*).

The terms of the Contract were later amended by various "change orders." (Dkt. 67-1 at ¶ 26; Dkt. 71 at ¶ 26). It is undisputed that Mrs. Verhelle, the owner of the Mendon Property, never signed the Contract, nor did she sign any of the change orders. (*See* Dkt. 67-1 at ¶ 24; Dkt. 68-2; Dkt. 68-3; Dkt. 68-4; Dkt. 68-5; Dkt. 71 at ¶ 24).

Plaintiff commenced the home improvement work at the Mendon Property on or about February 11, 2014. (Dkt. 67-1 at ¶ 25; Dkt. 71 at ¶ 25). The parties dispute who was responsible for providing project management services. In particular, the parties disagree over the role of Michael Short, an architect hired by Mr. Verhelle. Defendants contend that Mr. Short's role was merely to "intermittently observe and report to [Defendants] on the home improvement work being performed by Plaintiff," and that he "was not engaged to provide construction or project manager functions for this work." (Dkt. 67-12 at ¶¶ 43-44). Plaintiff, on the other hand, maintains that Mr. Short was serving as Mr. Verhelle's "architect, agent and project manager," and that he was "responsible for providing direction to the plaintiff as it related to any work which was not conforming to the plans/design he created for this renovation." (Dkt. 71 at ¶ 43). The parties further dispute the extent of Mr. Short's authority to accept, on Defendants' behalf, work performed by Plaintiff. (Dkt. 67-1 at ¶ 48; Dkt. 71 at ¶ 48).

Defendants contend that the construction work performed by Plaintiff was "materially defective." (Dkt. 67-1 at ¶ 49). Plaintiff disputes this characterization, and states that it performed the construction work "in accordance with the standards of the industry in the community," and that the construction work "was ratified by defendants' supervising agent, Michael Short." (Dkt. 71 at ¶ 49).

By August 4, 2014, Plaintiff had received a total of $441,200.08 in installment payments from Defendants. (Dkt. 67-1 at ¶ 53; Dkt. 71 at ¶ 53). On August 6, 2014, which was a Wednesday, an issue arose related to tile for the fireplace in the master bedroom. (Dkt. 71-20). On that date, at 12:50 p.m., Mr. Seidel e-mailed Mr. Verhelle to inform him that the master bedroom fireplace was "prepped ready for tile," but that when Plaintiff picked up the tile it discovered that the tile wholesaler had "shipped the wrong shade." (*Id.* at 4). Mr. Seidel indicated that the correct shade has been ordered and "should arrive late next week," and asked whether Mr. Verhelle would "like [Plaintiff] not to work in your home this week?" (*Id.*).

Mr. Verhelle sent a reply email at 1:42 p.m. that day, in which he stated that the "proposed delay" was "unacceptable," and requested that the correct tiles be overnighted so they could be installed that following week. (*Id.* 3-4). Mr. Verhelle further requested that Plaintiff "not work in the house after 3PM Friday (except the master bedroom)," and suggested a meeting on Saturday at 9:00 a.m., "to quickly review the punch-list." (*Id.*).

Mr. Seidel replied to Mr. Verhelle's email at 3:11 p.m., stating that he had spoken to the tile wholesaler, and that the earliest possible delivery date was the end of the day on Friday. (*Id.* at 3). Mr. Seidel apologized for the delay, stated that Plaintiff would "expedite the completion of the bedroom fireplace as soon as the correct [tile] shade arrives," and agreed to a meeting at 9:00 a.m. on Saturday to "review the completion of the punch list." (*Id.*).

Mr. Verhelle sent a further email at 3:43 p.m., asking how long it would take to complete the master bedroom fireplace, and if it could be done by the following Monday.

(*Id.*). At 5:29 p.m., Mr. Seidel emailed back, stating that he had had a further conversation with the tile wholesaler and that the tile for the master bedroom fireplace could not be delivered until the following Wednesday, but that Plaintiff had "other tile to do in the mean time." (*Id.* at 2-3).

Mr. Verhelle replied to Mr. Seidel at 6:18 p.m., stating that it was "complete nonsense" that the tile could not be shipped via air to arrive more quickly, and that "[g]iven your performance lapses, timing lapses and unacceptable work to date, I'm afraid you don't have the luxury of attempting to force the cost of you[r] ongoing mistakes onto your customer any longer." (*Id.* at 2). Mr. Verhelle went on to state:

> Please ship it via air and finish the master bedroom Saturday, Sunday and Monday. Please let me know your decision when we meet on Saturday at 9AM. In the meantime (between now and Saturday at 9AM), we hereby request that you immediately cease all work and do not enter the premises at 16 Windham Hill. The needed master bedroom materials must be shipped via air for delivery this weekend.

*Id.*

Mr. Seidel sent an email to Mr. Verhelle at 7:33 p.m. indicating that he did not understand Mr. Verhelle's last email, stating that "the shade issue with the tile is neither yours or my fault," and asking "[w]hy can't we just get this project done and paid?" (*Id.* at 1).

At 10:20 p.m. on August 6, 2014, Mr. Verhelle sent an email to Mr. Seidel in which he stated that he and Mr. Seidel were "obviously having an ongoing problem working together that goes beyond communication," and which concluded "[w]e can not continue

with you Jeff." (*Id.*). The parties dispute whether this email communication from Mr. Verhelle constituted a termination of the Contract. (Dkt. 67-1 at ¶ 59; Dkt. 71 at ¶ 59).

Neither Mr. Seidel nor any other representative of Plaintiff attended the 9:00 a.m. meeting on Saturday, August 9, 2014. (Dkt. 67-1 at ¶ 60; Dkt. 71 at ¶ 60). Defendants contend that Plaintiff thereafter "wrongly refused to resume work unless its unreasonable payment and work conditions were agreed to by Defendants" (Dkt. 67-1 at ¶ 61), while Plaintiff maintains that Mr. Verhelle had issued a "stop order" and terminated the parties' relationship (Dkt. 71 at ¶ 61).

## PROCEDURAL BACKGROUND

Plaintiff commenced the instant action on May 6, 2015, asserting claims against Defendants for breach of contract and unjust enrichment. (Dkt. 1). Plaintiff also alleges that, under the terms of the Contract, it is entitled to recover attorneys' fees and "1.5% interest per month on the balance due." (*Id.* at ¶ 16). Defendants answered the Complaint on June 30, 2015, and asserted the following eight Counterclaims against Plaintiff: (1) breach of contract and/or unjust enrichment; (2) breach of New York General Business Law ("GBL") § 349; (3) fraudulent misrepresentation; (4) violation of GBL § 772; (5) declaratory relief; (6) claim for attorneys' fees pursuant to New York General Obligations Law § 5-327; (7) breach of warranty; and (8) breach of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312. (Dkt. 8). Plaintiff filed an Answer to Defendants' Counterclaims on July 21, 2015. (Dkt. 10).

Discovery in this matter closed on March 30, 2018. (Dkt. 66). On May 7, 2018, Defendants filed a motion for partial summary judgment. (Dkt. 67). In particular,

Defendants seek summary judgment as to Plaintiff's first claim for breach of contract, and as to Plaintiff's related claim that it is entitled to recover attorneys' fees and 1.5% interest per month. (*Id.*).

Plaintiff filed papers in opposition to Defendants' motion on June 5, 2018. (Dkt. 71). Defendants filed reply papers on June 19, 2018. (Dkt. 73). On June 20, 2018, Plaintiff filed an amended declaration in support of its opposition papers. (Dkt. 75).[1]

## DISCUSSION

### I. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the

---

[1] Plaintiff filed a declaration from Mr. Seidel in opposition to Defendants' motion. (Dkt. 71-3). However, the declaration filed by Plaintiff was not signed. (*Id.* at 6). Defendants cited this deficiency in their reply papers, and asked the Court not to consider Mr. Seidel's declaration, because it did not conform with 28 U.S.C. § 1756. (Dkt. 73 at ¶ 4). Thereafter, Plaintiff filed an amended, signed declaration by Mr. Seidel. (Dkt. 75). The Court will accept and has considered the amended, signed declaration of Mr. Seidel.

party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The Court's jurisdiction in this case is premised on the parties' diversity of citizenship. (*See* Dkt. 1 at ¶ 3). Accordingly, in ascertaining the viability of the challenged claims, the Court applies New York law. *See Bank of N.Y. v. Amoco Oil Co.*, 35 F.3d 643, 650 (2d Cir. 1994) ("A federal court sitting in diversity jurisdiction will, of course, apply the law of the forum state on outcome determinative issues.").

## II. Unenforceability of the Contract Under GBL § 771

Defendants' primary argument in support of their motion for partial summary judgment is that the Contract is unenforceable because it does not satisfy the requirements

of GBL § 771, which governs home improvement contracts in New York. (*See* Dkt. 68-13 at 8-11). The Court agrees, for the reasons that follow.

GBL § 771 sets forth the requirements for a valid home improvement contract under New York State law. First, the home improvement contract must be "evidenced by a writing" and "signed by all the parties to the contract." N.Y. Gen. Bus. L. § 771(1). Second, the home improvement contract must contain various disclosures regarding the contractor, the work to be performed, pricing and payment, and the homeowner's rights and obligations. *Id.* at §§ 771(1)(a)-(h).

It is undisputed that the Contract in this case was a home improvement contract within the meaning of GBL § 771 and, accordingly, compliance with that law was required. As such, the Contract was required to be "evidenced by a writing" and "signed by <u>all the parties</u> to the Contract." N.Y. Gen. Bus. L. § 771(1) (emphasis added). The Contract itself defines "William <u>&</u> Cyndee Verhelle" as "signing parties" (Dkt. 67-18 at 2 (emphasis added)), yet it is undisputed that Mrs. Verhelle never signed the Contract. Accordingly, a reasonable jury would have to conclude that the Contract fails, on its face, to comply with GBL § 771's fundamental requirement that a home improvement contract be signed by all the parties.[2]

Plaintiff offers several arguments in support of its position that Mrs. Verhelle's signature was not required on the Contract. First, it claims that there "can be no question

---

[2] Because the Court concludes that the Contract does not comply with this fundamental requirement of GBL § 771, it need not and does not reach Defendants' argument that the Contract failed to appropriately convey the other disclosures required by that statute.

that there was a meeting of the minds in a written agreement," because Mr. Verhelle participated in the drafting of the Contract, and because "both parties acknowledge that they entered into a contract for remodeling and renovation." (Dkt. 71-1 at 3). Second, Plaintiff contends that it was Mr. Verhelle who modified the Contract to identify "William & Cyndee Verhelle (Homeowner)" as signing parties, and that Mr. Verhelle held himself out as a homeowner. (*Id.* at 3-4). Finally, Plaintiff contends that Mr. Verhelle intended to bind Mrs. Verhelle to the terms of the Contract, and that he had the authority to bind Mrs. Verhelle as her spouse under "an implied agency theory." (*Id.* at 4). The Court is not persuaded by these arguments.

Plaintiff's argument that there was a "meeting of the minds" between it and Mr. Verhelle, who purportedly participated in drafting the Contract, misses the point. GBL § 771 is a consumer protection statute, and its requirement that a home improvement contract be signed by "all parties" ensures that a homeowner is aware of his or her rights. *See Carrea & Sons, Inc. v. Hemmerdinger*, 42 Misc. 3d 791, 796 (Rye City Ct. 2013) (explaining GBL § 771 is part of "a consumer protection disclosure regimen to protect the property of homeowners from home improvement contractors"). In this case, regardless of any agreement reached between Plaintiff and Mr. Verhelle, there is no evidence that Plaintiff ever reached a "meeting of the minds" with *Mrs. Verhelle*, the sole owner of the Mendon Property. Moreover, contrary to Plaintiff's contentions, Mrs. Verhelle does not acknowledge entering into the Contract, and in fact testified at her deposition that she did not recall having ever seen the Contract in 2014, that she was not involved in the bid

process, and that she was not involved in the renovation project until the very end. (Dkt. 73-1 at 6-8).

Turning next to Plaintiff's argument that Mr. Verhelle is the one who included Mrs. Verhelle as a party to the Contract, it is not clear to the Court why Plaintiff thinks this contention supports its position. It is undisputed that Mrs. Verhelle is the sole legal owner of the Mendon Property. As such, her consent was required before any home improvement project could lawfully be undertaken. As a matter of basic property law, it was appropriate and necessary for her to be included as a party to the Contract. Additionally, under New York law, "it is the contractor's obligation to prepare the contract in compliance with the law. If the contractor fails to do so, it is the contractor who should bear the burden, not the homeowner, who only occasionally may enter into a home improvement contract." *Carrea & Sons*, 42 Misc. 3d at 796. In other words, regardless of what changes Mr. Verhelle may have requested as to the Contract, it was ultimately Plaintiff's burden, as the contractor, to ensure compliance with GBL § 771.

To the extent Plaintiff contends that Mr. Verhelle wrongfully held himself out as co-owner of the Mendon Property, the Court notes as an initial matter that property ownership is a matter of public record, and that the appropriate filing of a deed serves as constructive notice regarding the owner of real property. *See, e.g., Smullens v. MacVean*, 183 A.D.2d 1105, 1107 (3d Dep't 1992) ("The recording of the deed constituted constructive notice . . . that [the plaintiff] was the owner of such real property. A reasonable investigation of public records . . . would have revealed that [the plaintiff] was the title owner of the real property adjacent to defendants' property." (citations omitted)).

Moreover, there is no evidence in the record before the Court that Mrs. Verhelle ever represented to Plaintiff that Mr. Verhelle was a co-owner of the Mendon Property.[3] Plaintiff essentially asks the Court to hold Mrs. Verhelle responsible for Mr. Verhelle's purported misrepresentations simply because he is her husband, which is a result New York law will not countenance. *See Schwartz v. Bankers Tr. Co.*, 28 A.D.2d 696, 698 (2d Dep't 1967) ("[A] husband is not deemed the agent of his wife by inference from the marital relationship, the rule being that no agency is to be implied between the spouses from the mere fact of their marriage."), *aff'd*, 21 N.Y.2d 927 (1968); *Parent Teacher Ass'n, Pub. Sch. 72 v. Manufacturers Hanover Tr. Co.*, 138 Misc. 2d 289, 297 (N.Y.C. Civ. Ct. 1988) ("One spouse is not an agent of another and cannot be held liable for a spouse's independently wrongful act because of the marital relationship." (citation omitted)). In other words, Mr. Verhelle's alleged misrepresentations could perhaps serve as the basis for a tort claim against Mr. Verhelle (a claim that has not been pleaded). However, the alleged misrepresentations by Mr. Verhelle cannot circumvent the statutory requirement that Mrs. Verhelle's signature was required on the Contract in order to render it enforceable.

Lastly, the Court is not persuaded that Mr. Verhelle was serving as Mrs. Verhelle's agent, such that he could bind her to the Contract's terms. It is true that, under New York law, "[a] spouse, under certain circumstances, may also cause his or her spouse to incur

---

[3] Mr. Seidel has asserted, in conclusory fashion, that "defendants have held themselves out as co-owners of the property and home located at 16 Windham Hill." (Dkt. 75 at ¶ 7). It is well established that the party opposing a motion for summary judgment may not rely on "conclusory allegations or unsubstantiated speculation" to create an issue of material fact. *Robinson*, 781 F.3d at 44.

liability under a theory of implied agency." *Jones-Soderman v. Mazawey*, No. 09 CIV 3185 SCR LMS, 2010 WL 54759, at *4 (S.D.N.Y. Jan. 6, 2010). In particular, implied agency may exist "where the circumstances are such as to give rise to, or raise a presumption of, an implied authority to make such contracts or purchases, as for example, where the one spouse has been in the habit of conducting the other's business and making purchases therefor, and the other spouse has acquiesced therein." 45 N.Y. Jur. 2d Domestic Relations § 245. However, "[i]n accordance with the general rule of agency, one spouse is not, under any theory of agency, bound by, or liable for, the act or contract of the other which is beyond the actual, and not within the apparent, scope of the other spouse's authority or employment, unless the transaction is ratified by the spouse." 45 N.Y. Jur. 2d Domestic Relations § 247 (emphasis added). In other words, as with all theories of agency, an implied agency theory requires some affirmative act by the purported principal to demonstrate an intent or willingness to be bound by the purported agent. *See Greene v. Hellman*, 51 N.Y.2d 197, 204 (1980) ("As with implied actual authority, apparent authority is dependent on verbal or other acts by a principal which reasonably give an appearance of authority to conduct the transaction. . . ."); *see Hallock v. State*, 64 N.Y.2d 224, 231 (1984) ("The agent cannot by his own acts imbue himself with apparent authority.").

Here, Plaintiff has identified no affirmative acts by Mrs. Verhelle to support a finding of implied agency. To the contrary, Plaintiff has cited no facts whatsoever in support of its implied agency argument. (*See* Dkt. 71-1 at 4). As the party claiming apparent authority by a purported agent, Plaintiff bears the burden of proof on this issue. *See Ford v. Unity Hosp.*, 32 N.Y.2d 464, 472 (1973) (under New York law, "[o]ne who

deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority," and in order to support an apparent authority argument, a party must make "a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of the principal—not the agent"). On the record before the Court, no reasonable jury could conclude that Plaintiff had met that burden.

The cases cited by Plaintiff are distinguishable from the instant matter, because in each of them, there was evidence of affirmative conduct by the party who was found to be potentially bound by their spouse. In *In re Bear Stearns Companies, Inc. Sec., Derivative, & Erisa Litig.*, 308 F.R.D. 113 (S.D.N.Y. 2015), there was evidence in the record that the husband and wife had "worked in concert to make the trades at issue in the case," and had affirmatively claimed each other as agents in a related context. *Id.* at 121. In *Jill Real Estate, Inc. v. Smyles*, 150 A.D.2d 640 (2d Dep't 1989), the issue was whether a husband's signature on a memorandum of sale bound his wife, the co-owner of the property at issue. *Id.* at 642. In that case, the wife had participated in the sale and "unequivocally informed [the plaintiff] that she was not the owner of the property." *Id.* Finally, in *Kozecke v. Humble Oil & Ref. Co.*, 46 A.D.2d 986 (3d Dep't 1974), the Court expressly acknowledged that "an agency between husband and wife is not to be implied from the mere fact of marriage," but explained that the evidence of record supported the conclusion that the wife in that case had participated in and ratified her husband's conduct. *Id.* at 987. In this case, Plaintiff has not adduced any evidence of participation by Mrs. Verhelle in the negotiation of the Contract, or cited any facts that would support the conclusion that she ratified its

terms. To the contrary, the record before the Court shows no communication between Plaintiff and Mrs. Verhelle whatsoever. Plaintiff cannot demonstrate that Mr. Verhelle was acting as Mrs. Verhelle's implied agent based on nothing more than their marital relationship.

Moreover, even were Plaintiff able to show an implied agency relationship between Mr. and Mrs. Verhelle, the plain language of GBL § 771 requires the signatures of all parties, not their agents. Plaintiff has cited to no case law supporting the position that GBL § 771's requirement that all parties sign a home improvement contract can be satisfied through a showing of implied agency. GBL § 771 is a consumer protection statute that contains a writing requirement specifically to make certain that homeowners are informed of their rights and, and requiring a personal signature from every contracting party is part of that statutory scheme. Plaintiff has not demonstrated that the common-law concept of implied agency can trump this express statutory requirement. *Cf. Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 159 (2d Dep't 2010) (explaining that the New York Court of Appeals reads consumer protection statutes broadly to effectuate their remedial purposes).

Having determined that the Contract in this case fails to satisfy GBL § 771, the Court next considers whether, as Defendants contend, that renders the Contract unenforceable. New York's highest court, the New York Court of Appeals, has not opined on the consequences for failing to comply with the requirements of GBL § 771. However, two of New York's intermediate appellate courts—the Appellate Divisions of the Third and Fourth Departments—have held that "the failure to strictly comply with [GBL § 771] bars recovery under an oral or insufficiently detailed written home improvement

contract[.]" *Harter v. Krause*, 250 A.D.2d 984, 986-87 (3d Dep't 1998); *see also Weiss v. Zellar Homes, Ltd.*, 169 A.D.3d 1491, 1493 (4th Dep't 2019); *Frank v. Feiss*, 266 A.D.2d 825, 826 (4th Dep't 1999).

The Appellate Division, Second Department has taken a somewhat more lenient approach to compliance with GBL § 771, holding that "an otherwise valid, signed, written contract" is not "rendered unenforceable solely by virtue of its failure to contain each and every item enumerated in General Business Law § 771." *Wowaka & Sons, Inc. v. Pardell*, 242 A.D.2d 1, 7-8 (2d Dep't 1998). However, even the Second Department has held that GBL § 771 precludes enforcement of home improvement contracts that are not "in writing and signed by the parties thereto." *F & M Gen. Contracting v. Oncel*, 132 A.D.3d 946, 948 (2d Dep't 2015); *see also Home Const. Corp. v. Beaury*, 149 A.D.3d 699, 702 (2d Dep't 2017) ("General Business Law § 771 sets forth a number of requirements for home improvement contracts, including that the contract be evidenced by a writing signed by all the parties to the contract. . . . [A] contractor cannot enforce a contract that fails to comply with General Business Law § 771.").

Based on these intermediate appellate court cases, the Court concludes that, under New York law, a home improvement contract that does not comport with GBL § 771's signature requirement is unenforceable. Accordingly, the Court agrees with Defendants that Plaintiff's first cause of action, for breach of the Contract, fails as a matter of law.

The Court's conclusion does not leave Plaintiff without recourse to seek the compensation it contends it is owed for the work it performed. *See Weiss*, 159 A.D.3d at 1493 (explaining that "although the failure to strictly comply with the statute bars recovery

under an oral or insufficiently detailed written home improvement contract, such failure does not preclude recovery for completed work under principles of quantum meruit" (quotation omitted)). Defendants have not sought summary judgment on Plaintiff's unjust enrichment claim, and Plaintiff remains free to pursue that theory of recovery.

### III. Claim for Attorneys' Fees and Contractual Interest

The Court turns next to Plaintiff's claim that it is entitled to attorneys' fees and interest under the terms of the Contract. The Court notes initially that there are clearly disputes of material fact as to whether the purported fifth page of the Contract, where these provisions are found, was agreed to by Mr. Verhelle. However, this issue is mooted by the Court's finding that the failure to comply with GBL § 771 prevents Plaintiff from recovering under the Contract. In other words, regardless of whether the Contract contained provisions for attorneys' fees and interest, those provisions, like all of the Contract's other terms, are unenforceable. *See, e.g., McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993) (explaining that "a federal court will enforce contractual rights to attorneys' fees" only "if the contract is valid under applicable state law"). Therefore, the Court grants Defendants' request for summary judgment on Plaintiff's claim for contractual interest and attorneys' fees.

### CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for partial summary judgment (Dkt. 67) as to Plaintiff's claims for breach of contract and for contractual interest and attorneys' fees.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: September 9, 2019
Rochester, New York